Certiorari granted, January 9, 2006
Vacated by Supreme Court, January 9, 2006

**PUBLISHED**

Filed: June 10, 2005

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DARICK DEMORRIS WALKER,
*Petitioner-Appellant,*

v.

PAGE TRUE, Warden, Sussex I State
Prison,

*Respondent-Appellee.*

No. 04-22
(CA-01-1196-A)

---

### O R D E R

---

Appellant filed a petition for rehearing en banc, and appellee filed an opposition to the petition.

A member of the Court requested a poll on the petition for rehearing en banc. The poll failed to produce a majority of judges in active service in favor of rehearing en banc. Chief Judge Wilkins, Judges Widener, Wilkinson, Niemeyer, Luttig, Williams, Michael, Motz, Traxler, King, Shedd and Duncan voted against rehearing en banc. Judge Gregory voted in favor of rehearing en banc and filed a dissent.

The Court denies the petition for rehearing en banc. Entered at the direction of Judge Luttig for the Court.

For the Court

/s/ Patricia S. Connor
Clerk

GREGORY, Circuit Judge, Dissenting:

This case, if distilled to its essence, asks this question: what level of legal assistance for defendants in state capital cases is tolerable

enough to justify this Court's denial of the protection of the "great writ"? Because the level of representation at the sentencing phase of Walker's capital case was too low to be tolerable under a fair assessment of his Sixth Amendment rights, I respectfully dissent from the order denying rehearing en banc.

Walker was appointed two lawyers to defend him in his capital case. One lawyer was an experienced capital case litigator but the other lawyer, who was primarily responsible for the sentencing phase of the trial, never defended a capital case.

Counsel received public school records that contained a psychological evaluation report on Walker when he was eleven years and six months old, stating that his:

*INTELLECTUAL FUNCTIONING*:

. . . Performance on the Bender Visual Gestalt Test revealed significant delays in perceptual motor development. Using the Koppitz scoring method, he achieved a z-score of minus 2.57 which is equivalent to a standard score of 61 or the 0.9 percentile level. Quantitatively, the number of errors which he made is similar to what would be expected of the typical six year old child. While there is some integration difficulties and tendencies to rotate all or part of designs, the major difficulties which he displayed were accurately copying the acute angles in the more difficult designs. This type of error is most commonly found in protocols of individuals who are mentally retarded or who have some type of organic deficiency . . . .

*PERSONALITY FUNCTIONING*:

. . . Projective drawings are significantly more immature than would be expected for a person with his intelligence level or even with his level of delay in perceptual motor development, and his human figure drawing, which is a cephalopod, is similar to what would be expected of a child four years, six months of age, based on the Goodenough

scoring criteria. Intellectually, a drawing of this caliber would be expected of a person, at his age, with an I.Q. of 39 which falls in the severely mentally retarded range. Such an immature drawing indicates either psychological regression with grossly impaired reality contact or organic involvement . . . .

*RECOMMENDATIONS:*

. . . Due to the gross personality immaturity, inconsistencies between current test scores as well as inconsistencies between present and past test scores, it is recommended that Darick receive a complete psychological evaluation in one year to evaluate his intellectual development and to rule out organic or psychotic disturbance that might be interfering with his adjustment.

Walker was never tested as a follow up to the psychological evaluation report's clinical findings and impressions relative to organic brain dysfunction.

Although Dr. Thomas, the court appointed expert, previously told counsel that he could not give favorable mitigating testimony based on all of the information available to him at that time, he told counsel that he really needed to receive Walker's school records. Despite knowing their importance, counsel never gave the school records, which included the psychological evaluation report, to Dr. Thomas or any other expert. In fact, Walker's counsel never told Dr. Thomas that the psychological report existed. Moreover, counsel never moved for a continuance to conduct any investigation of the newly discovered report relating to an organic brain dysfunction.

It is now known, based upon post-trial examinations by experts, that Walker does have an organic brain disorder. This is strong mitigating evidence that would have been available at trial if counsel's representation had not been constitutionally deficient. All of counsel's purported *general* proficiency in investigating and preparing for Walker's defense does not and can not balance or excuse counsel's *specific* deficiency in failing to provide any expert with the psychological report relating to organic brain dysfunction.